UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA,

        -against                                    09 CR 558 (CM)

JAMES CROMITIE et al.,

        Defendants.

------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/10

MEMORANDUM ORDER SUMMARIZING DEVELOPMENTS AND
EXCLUDING TIME UNTIL JUNE 25, 2010

McMahon, J.:

    To summarize recent developments in one place:

    On Wednesday, June 9, 2010, the Government turned over a quantity of additional 3500 material relating to one of its trial witnesses, Special Agent Robert Fuller of the Federal Bureau of Investigation. In the pile was a document denominated 3500-188.

    The following day, Thursday, June 10, prior to the morning court proceeding to review juror questionnaires, the Government sent an e-mail, of the sort known to the court as an "excess of caution" e-mail, to defense counsel. The e-mail said, in substance, that the defense might wish to take special note of document 3500-188, because the defense might consider it to be Brady material, although the Government did not believe that it was.

    This matter was brought to the Court's attention by defense counsel on the afternoon of Thursday, after 370 juror questionnaires were pre-screened for hardship and obvious bias. As the Government had anticipated, the defense argued that the document should have been turned over under Brady v. Maryland, 373 U.S. 83 (1963). Counsel also argued, as they had been arguing for nine months, that there had to be more such documents in the Government's possession, and that the court should direct that those documents be turned over as well.

    The Court agreed with defense counsel that document 3500-188 was Brady material; I also agreed that it was 3500 material that had been turned over after the court-ordered deadline for doing so. The Government argued principally that the Agent's explanation/interpretation of what he was saying meant that the communication did not

tend to negate any of the three "prongs" of predisposition to commit the crimes charged, but I found that argument unpersuasive; of course the Government could elicit the Agent's explanation but ultimately the meaning of the document was for the jury to decide.

Defense counsel requested a continuance based on the late turn-over of Brady material, but the court concluded that there was no need for any adjournment of the trial. Although jury selection was scheduled to begin on Monday, June 14, the parties had already been given two days off after openings (anticipated for Wednesday June 16), which gave the defense ample time to do whatever additional work might be necessitated by the document Since the few individuals who were copied on or referenced in the document were all (or all but one) law enforcement officers, it appeared to the court that they would not wish to be interviewed by defense counsel, so additional work would be minimal.

Over the weekend, the Court received a letter motion for reconsideration of the Court's announcement that it agreed with the defense characterization of the document it had already turned over as Brady. In that letter, the Government raised the possibility – for the first time – that if the ruling were not overturned, it would have to embark on an arduous, months-long procedure of declassifying additional documents (possibly numerous additional documents) that might also contain Brady material.

The specter of the declassification process is not a reason to reverse a Brady ruling, and as the Government did not raise any other new argument, or point to anything the court has overlooked, I denied the motion for reconsideration. That decision was memorialized on the record yesterday, June 14.

The Government attached to its motion three redacted emails and asked for a ruling on whether they had to be turned over. The court ruled that two of them did – one as Brady; one as containing 3500 material for Agent Fuller. I also noted that this second document contained material that was possibly as Brady as to one or more of the defendants other than Cromitie (one paragraph of the memo related to members of a "sutra" team, not identified by name, who made statements that were clearly exculpatory in an entrapment case; if any of those individuals was a defendant, then the matter was indisputably Brady). [1]

The Government responded to this ruling by requesting an adjournment of the trial. It advised the Court that, if document 3500-188 were Brady material, then the Government could not represent that it had complied with its Brady obligations. The Government further stated that it could not represent compliance without conducting a search through several unidentified Government agencies for documents that might contain similar material; apparently, no such search was ever commenced. If that search turned up anything that was arguably Brady material, the Government advised, we would

---

[1] The Government also revealed, in a footnote to its letter motion, that much of Agent Fuller's case file remained classified and had not been turned over, although the Government protested that it would fall within one of the exceptions to 3500 material and so did not need to be turned over.

2

have to begin a months-long process to declassify those documents, obtaining security clearance for defense counsel and members of the court's staff so we could deal with any documents that could not be declassified, and setting up CIPA procedures for document review and argument – all in a case in which the Government has retreated from its original position that the defendants had any connections to any international terrorist organization.

When court adjourned yesterday, the Government had still not decided whether to appeal the court's ruling; the most it could say was that it and the Court had a "different understanding" of what documents would constitute <u>Brady</u> material in the context of this particular case. In fact, the Government appeared not at all sure how to proceed; and because of that, it could not estimate how long a continuance it might need.

The Court was and remains shocked that the Government did not anticipate, in a case that began with a counterterrorism investigation (however it turned out), that the investigation might have generated documents that would have to be turned over, either as <u>Brady</u> or 3500 material, but that were (perhaps even for reasons not relating to these defendants) classified. The Government should have made sure that it identified any such documents long ago, so that we could set up such procedures as might be necessary to deal with them and with the issues they might raise. However, in view of the Government's representation, as well as defense counsel's argument that they would be waiving their clients' rights under <u>Brady</u> if they had to go forward, the Court had little choice but to grant a continuance.

Defense counsel have now moved, on the record, to dismiss the indictment as a result of the Government's failure to deal with this issue prior to the scheduled trial date. They also indicated an intent to renew their motion for dismissal on the ground of outrageous government misconduct, which had previously been denied without prejudice (and with the suggestion, to which I still subscribe, that the issues raised on such a motion would be better left until after the trial). Defense counsel also indicated their intention to move to dismiss on *constitutional* speedy trial grounds, although by the Court's calculation there were 60 *statutory* speedy trial days left to run as of yesterday.

The Court set a briefing schedule for these motions, as well as a <u>Franks</u> motion occasioned by alleged discrepancies between Agent Fuller's representations to the people at Stewart and what he said in various Title III applications submitted to a judge of this court. I also granted the Government a two day stay of my order directing the turnover of the two documents so that it could decide whether or not to take an appeal; set a date for hearings on defendants' bail motions (Monday, June 21); and set a status conference to get an update on the Government's plans (Friday, June 25).

The defense objected to any further exclusion of time for statutory speedy trial purposes and argued that the pendency of its new motions should not stop the clock, because the motions were necessitated by Government's lack of readiness for trial on the scheduled trial date.

The court excluded time, but only until June 25. The record may not be clear as to why I did so. Time is excluded because it is in the interest of justice for the Court to research carefully the issue of whether the pendency of defense motions automatically stops the clock -- even in the present highly unusual circumstances -- or whether the court has discretion to rule, or perhaps even must rule, that the clock is now running. The parties are invited to weigh in on that issue, but they must do so by the end of this week. I am interested in legal, not equitable, arguments; I am well aware of the equities of this highly unfortunate situation.

I assume that, if the Government files a notice of appeal, it will seek expedited treatment. I ask that counsel keep the Court informed of developments (if any) on the appellate front.

Dated: June 15, 2010

_____
U.S.D.J.

TO ALL COUNSEL VIA ECF