```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____               │
│ DATE FILED: ___6/25/10___        │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

UNITED STATES OF AMERICA,

        -against                         09 CR 558 (CM)

JAMES CROMITIE et al.,

        Defendants.

———————————————————————————x

## DECISION AND ORDER REGARDING BAIL AND SPEEDY TRIAL

McMahon, J.:

Defendants' Motion for Bail

Following the Government's request for what is essentially an open-ended continuance so that it could comply with its Brady obligations, three of the defendants – all of whom have been incarcerated for thirteen months – have applied to be admitted to bail. The non-moving defendant, Laguerre Payen, is a citizen of Haiti who is in this country without authorization; he is subject to a B.I.C.E. hold and cannot be released under any circumstances.

The defendants acknowledge that this is a so-called "presumption" case, in which the nature of the charges is such that it is presumed that no condition or combination of conditions can assure the defendants' appearance at trial. 18 U.S.C. § 3142(e). The presumption is rebuttable, of course, but the burden of rebutting it rests with the defendants.

The Court is aware of the gravity of the charges against the defendants, the length of the sentence they face if convicted and the strength of the case against them. The Court is also aware that the Government's case may not be as ironclad as it appeared in the hours and days immediately after the defendants were arrested. Nonetheless, the Court concludes that defendants Cromitie, Onta Williams and David Williams have failed to rebut the presumption and so they will remain on remand status.

Defendant David Williams asks for release on a personal recognizance bond signed by five financially responsible persons. He agrees to electronic monitoring and strict pre-trial supervision. However, the Court finds the following factors do not overcome the presumption, especially in a case of this seriousness: David Williams has a conviction for a violent felony involving the possession of a loaded firearm; his probation

on a previous case was revoked, and he received a two year sentence for violation of probation.[1] Because neither Mr. Williams nor any friend or relative is able to post any security for the bond, the "moral suasion" factor that can carry weight in a serious case like this one is effectively absent; as a result, there is little or nothing to counter the argument that the seriousness of the charges and the length of the penalties facing the defendant (potentially 25 year mandatory minimums) are such that he becomes more likely to flee.

Defendant Onta Williams asks for release on a $250,000 bond secured by $50,000 in cash or real estate and co-signed by five financially responsible persons. He agrees to electronic monitoring and strict pre-trial supervision. The fact that Onta Williams is able to post security is a factor in his favor, since the "moral suasion" argument kicks in. However, the following factors undercut that and cause me to conclude that he has not rebutted the presumption of detention: Onta Williams has a conviction for a federal firearms violation and for possession with intent to distribute crack cocaine, for which he was sentenced to a total of 70 months incarceration and four years supervised release; he has not been fully compliant with the terms of his supervision and presently has a violation of supervised release outstanding for failure to notify probation of a change of address; he has a prior revocation of probation, for, *inter alia*, failure to report; and while he has ties in the community, he has no place of residence or employment available to him upon release.

Defendant James Cromitie asks for release on a "substantial personal recognizance bond" co-signed by three financially responsible persons. He agrees to electronic monitoring and strict pre-trial supervision. The following factors counsel against a finding that the presumption has been overcome: a total of 14 convictions, including four felonies; use of multiple aliases, multiple prior failures to appear; and previous parole revocation. It further appears that he absconded (most likely from a halfway house) during a prior incarceration for a drug offense, which (after he was returned to custody) resulted in his serving nearly two additional years. Although many of Cromitie's convictions are old, given the seriousness of the charges he is facing, the fact that he previously absconded carries great weight with the Court. He, too, was unemployed at the time of his arrest, and he, too, is unable to post security for a bond. For these reasons, the presumption is not overcome.

The fact that the defendants will remain incarcerated lends additional urgency to the proper calculation of speedy trial time – an issue that must be addressed now because, absent some indication from the Court today that further time is being excluded, the Speedy Trial clock will begin to run tomorrow.

---

[1] David Williams also has an open bench warrant, but that is because his arrest in this case prevented him from appearing on another case, in which he was convicted of a misdemeanor and sentenced to pay a fine. It therefore falls out of the equation.

Further "Exclusion of Time" and Speedy Trial Act Issues

The Government is not yet able to state how long a continuance it will need in order to comply with its Brady obligations. It has stated that certain material will be turned over by July 9, and that it hopes to complete its review of classified materials by August 6 and to make whatever application it may need to make to the court pursuant to Section 4 of the Classified Information Procedures Act by that time. This led the court to question what the implications of the continuance might be for the Speedy Trial Act and the Constitutional guarantee of a speedy trial. The parties were asked to address this issue, and it was discussed at the bail hearing and again extensively at a conference on June 24.

### Relevant Legal Principles

The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  The Supreme Court has termed this guarantee "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." United States v. Ewell, 383 U.S. 116, 120 (1966); see also Klopfer v. N. Carolina, 386 U.S. 213, 221-26 (1967); Dickey v. Florida, 398 U.S. 30, 37-38 (1970). With the passage of the Speedy Trial Act of 1974, Congress provided rules with specific timeframes for courts to follow in policing the speedy trial guarantee. 18 U.S.C. § 3161. The prosecutor, defense counsel, and the court each plays a role in insuring that the interests of the public and the defendant in a speedy trial are protected. "The Act controls the conduct of the parties and the court itself during criminal pretrial proceedings. Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself." United States v. Pringle, 751 F.2d 419, 429 (1st Cir. 1984).

The Speedy Trial Act provides in relevant part that "the trial of a defendant charged in an information or indictment . . . shall commence within seventy days . . . from the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c). Absent exclusions, if the trial does not begin within this 70-day period, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2).

The Act's time limit serves dual purposes: it protects "the defendant from undue delay in his or her trial and [ ] benefit[s] society by ensuring a quick resolution of criminal trials." United States v. Kelly, 45 F.3d 45, 47 (2d Cir. 1995).  However, Congress was aware of the practical difficulties of bringing a criminal case to trial. For that reason, the statute provides that certain clearly defined periods "shall" (i.e., must) be excluded from the speedy trial time calculation. See 18 U.S.C. § 3161(h)(1)-(6) and (8). A review of these periods of mandatory exclusion are designed principally to accommodate a defendant's need (1) to defend himself against the charges lodged by the Government and (2) to participate meaningfully in his own trial. They do not appear to be

3

designed to give the Government additional time to prepare its case, although the Government does on occasion derive some incidental benefit from them.

Additionally, a court, on its own motion or at the request of either side, may grant a continuance if it concludes that the ends of justice served by allowing the continuance outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7). An "ends of justice" exclusion may not be granted "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). While the decision to grant an ends-of-justice continuance must be prospective, not retroactive, it is sufficient to satisfy the statute if a court makes an initial determination to grant an ends-of-justice continuance and subsequently articulates the reason for that exclusion. See United States v. Tunnessen, 763 F.2d 74 (2d Cir. 1985); United States v. Brooks, 697 F.2d 517, 522 (3d Cir. 1982).

In deciding whether to allow an ends of justice continuance, the court may consider, among other factors: whether the failure to grant such a continuance in the proceedings would be likely to make a continuation of such proceeding impossible or result in a miscarriage of justice; whether the case is so unusual or complex that it is unreasonable to expect that the case could be tried within the statutory period; and whether the failure to grant such a continuance in a case that is not complex or unusual would nonetheless deny the defendant reasonable time to obtain counsel or to allow for effective preparation of the case. 18 U.S.C. § 3161 (h)(7)(B)(i-iv).

However, "No continuance under [the ends-of-justice subsection] shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161 (h)(7)(C). This prohibition underscores that the exclusions in the Speedy Trial Act are, at their fundament, designed for the benefit of the defendant, not the Government.

For purposes of the Speedy Trial Act, trial commences when *voir dire* commences. United States v. Stayton, 791 F.2d 17, 19 (2d Cir. 1986); United States v. Jones, 1998 WL 777027 (2d Cir. Oct. 29, 1998). Any court-supervised examination of prospective jurors is reasonably understood to be part of *voir dire*. United States v. Quinones, 511 F.3d 289 (2d Cir. 2007). This includes the review of juror questionnaires, a process district courts routinely employ to facilitate *voir dire* where a large number of prospective jurors must be screened, see, e.g., United States v. Rahman, 189 F.3d 88, 121 (2d Cir. 1999).

But Speedy Trial Act requirements are not satisfied if the trial is commenced and then unreasonably delayed. See United States v. Fox, 788 F.2d 905 (2d Cir. 1986); Stayton, 791 F.2d at 19. Unless any continuance is both reasonable in duration and in purpose, the clock will start to tick again. And the reasonableness of any post-commencement delay must be determined with the principles and the structure of the Act

4

in mind – remembering that the Act imposes strict time limits and tempers them with exceptions that are designed principally to accommodate a defendant's due process needs. Of course, the "ends of justice" provision also remains available to the court to deal with continuances after trial has commenced – but always subject to Congress' directive (which the court is powerless to ignore) that remedying the Government's failure to prepare its case is never in the "ends of justice."

*Relevant Facts*

In this case, *voir dire* commenced on June 8 (six days prior to the originally-anticipated date), when a venire panel responded, under oath, to a questionnaire that had been prepared by the parties and the Court. Defendants, their counsel and the Court reviewed those questionnaires and struck certain jurors for cause on June 10. A subset of the jurors who were not stricken during that court session were then summoned to appear for further questioning on June 14.

On the morning of June 14, the Government advised the Court that it could not represent that it had fully complied with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). It therefore asked for an adjournment of the trial so that it could renew its search for potentially discoverable evidence. Unfortunately, the Government was unable to estimate how long this search might take, although it stated that the matter might require some months, because it could involve classified material. The defendants opposed the application, but defense counsel also indicated that they could neither waive their clients' rights under Brady nor proceed in good conscience without knowing whether there was potentially exonerative material yet to be produced and reviewed.

The Court granted the Government's application and adjourned the trial for ten days, until June 25, so that the Government could make a thorough assessment of what it needed to do and how long it would take to accomplish. The defense immediately announced that it would be pursuing various motions during the continuance, including, apparently, a renewed motion to dismiss the case due to outrageous government misconduct,[2] a Speedy Trial motion, and a motion to suppress intercepted wire communications evidence pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978). This last motion was occasioned by what the defense describes as inconsistencies between the contents of Fuller 3501-188 and affidavits sworn out in support of various Title III applications.

---

[2] The defense motion to dismiss on the ground of outrageous government misconduct has already been denied once, albeit without prejudice, and it should be obvious, from the prior opinion, that the Court is highly unlikely to grant such a motion prior to trial if renewed. The Government's failure to conduct a sufficiently thorough search for Brady material is not the type of "misconduct" for which one dismisses an indictment on the ground of "outrageous government misconduct." That rarely-used doctrine implicates misconduct in the procurement of the criminal conduct under indictment, not mistakes made post-indictment by the prosecutor. The Court has already concluded that the overlap between evidence relevant to such a motion and evidence relevant to the defense of entrapment effectively precludes the determination of such a motion prior to trial; any hearing that might be needed to explore the issue of government misconduct could taint the jury pool.

The Court also needed to educate itself on numerous matters, ranging from the procedural (what happens to the Speedy Trial clock if a continuance is granted after the commencement of trial) to the substantive (having to do with security clearance requirements and classified documents).[3] In fact, the Court was not even sure if trial had officially commenced (my law clerk located United States v. Stayton later in the day). Therefore, as a precautionary measure, the Court excluded time until our next scheduled status conference on June 25, relying on the "ends of justice" exception. I also asked the parties to weigh in on the Speedy Trial Act implications of the situation we were facing – which was unprecedented in the Court's experience, and is apparently unprecedented in the experience of everyone else involved.

*Speedy Trial Implications*

The parties have analyzed the speedy trial issues as though we were still in a posture where it would be appropriate to count days and exclude time from a speedy trial "clock." The defense urges that no time occasioned by this delay can be excluded from a Speedy Trial calculation, because the delay resulting from this continuance is occasioned solely by the Government's failure to prepare diligently for trial, and the Speedy Trial Act does not permit such time to be excluded. The Government argues that no Speedy Trial Act time can run as long as the motions the defense made orally on June 14 remain undecided, analogizing them to pre-trial motions, as to which the time needed to brief and decide them is automatically excludable. The Government further argues that it has not failed to prepare diligently for trial, so the Court could authorize an ends of justice continuance.

It seems, however, that everyone (the Court included) has been addressing the wrong question.

The trial has started, so the speedy trial clock has stopped running. It stopped on June 8, when the trial began, and it is still stopped – not, I believe, because the Court excluded ten days of time to try to sort this out (or, to use the Government's favorite phrase, "in an excess of caution"), but because, for Speedy Trial Act purposes, the clock stops when the trial commences. We are in a period of post-commencement delay. And we do not know when it will end.

At some point, the Court will have to assess whether the delay resulting from the continuance is reasonable or not. Fox and Stayton make it clear that this question will be answered within the context of the Speedy Trial Act. But that does not mean that the Court can or should behave as though we were still in a pre-trial posture – we are not.

---

[3] So the record is clear: No one has moved for a mistrial, and the Court has not granted a mistrial. The Government asked for an adjournment (which is the same thing as a continuance, but is not a mistrial) and the Court granted that application. In a letter dated June 17, 2010, the Government tried to suggest that there had been a mistrial, thereby restarting the Speedy Trial clock and putting it once again in the pre-trial phase, but it has not pressed the point strongly, which is understandable, because it is not what actually happened.

6

The clock stopped when the trial began, so it is neither necessary nor appropriate to "exclude time" for Speedy Trial Act purposes. Someday we will have to decide whether the period of stoppage was reasonable. Much as we would like to have an answer to that question today, to guide us in planning this case and our lives, we cannot make that determination today.

There is, of course, no discernable precedent on this point (this case appears to be *sui generis* in many respects). The principles and precedents we have argued over the last week will no doubt prove relevant if the Court is asked to dismiss the indictment on speedy trial grounds, either after the present delay has gone on beyond what the defense contends is the bound of reasonableness (I am not sure when that would be, but we are surely not there yet), or in some post-trial motion made by the defense (but only in the event of a conviction).

However, in the absence of precedent, it seems advisable to explain to the parties what the Court would do if the premises that framed our arguments of the past few days were correct – which is to say, if it were appropriate for a court either to "exclude time" or to decide not to exclude time during this post-commencement of trial delay. I am generally loath to issue hypothetical opinions, but in this case it appears unavoidable. We will not be able to recreate this moment again, and if time is to be excluded from a speedy trial calculation – at least, under the "ends of justice" exception – it must be done prospectively, not retrospectively. So the better part of valor – or an excess of caution – suggests that the Court address the arguments about the excludability of time that the parties have urged over the course of the last week.

As noted, there are two possible bases for "excluding time" in the present circumstances: I will deal first with the Government's contention that time attributable to new defense motions is "excludable time" for Speedy Trial Act purposes – which, if I may recast the argument slightly, would render any such time a period of "reasonable delay."

There are, it seems to me, two ways to answer the question.

The first is to say that if it is still possible to "exclude time" in our current posture, then we are treating the case as though it were still prior to trial and we should simply apply the entire Speedy Trial Act as though it were still prior to trial. In that case, motions are motions and the time is automatically excludable.

The Government argues that this is the case, citing United States v. Cobb, 697 F.2d 38 (2d Cir. 1982). In Cobb, a district court refused to exclude 27 days of Speedy Trial time that were attributable to a delay between the making of a pre-trial motion to suppress and the next date when excludable delay took effect. The Government argued that the time from the making of the oral motion through decision had to be excluded under the subsection of § 3161(h)(1) that mandates the exclusion of time resulting from "delay resulting from the any pretrial motion, from the filing of the motion through the

7

conclusion of the hearing on, or other prompt disposition of, such motion."[4] The district court declined to exclude time. It reasoned that the Speedy Trial Act mandates the exclusion only of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." In the case before it, the motion had in fact occasioned no delay in the trial.

The Second Circuit reversed. It ruled that the Act automatically excluded time from the making of the motion until its disposition (provided, of course, that disposition was "prompt"), without regard to whether the motion had actually caused a delay in the trial date. The Circuit ruled that time could not be extended beyond what was "reasonably necessary for the processing of the motion," Cobb, 697 F.2d at 46, but even that concession was eliminated by the United States Supreme Court, which ruled, in Henderson v. United States, 476 U.S. 321 (1986), that the relevant subsection required the automatic exclusion of all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not any delay in holding that hearing was "reasonably necessary.'"

Of course, Cobb, Henderson, and the subsection of the Speedy Trial Act on which they rely all deal with the period needed to decide *pre-trial* motions; they say nothing about whether delay in a trial occasioned by motions made after the trial commences would or would not be excludable for Speedy Trial Act purposes. For that reason alone, the defense urges that the Court simply ignore them and consider whether an "ends of justice" exclusion is permissible in the circumstances – which, they argue, it is not, since the time that would be excluded is attributable to the Government's lack of diligence in preparing its case.

But the Government has cobbled together a clever argument, which goes as follows: (1) Fox and Stayton hold that a court must evaluate the reasonableness of delay after the commencement of trial by looking to the context of the Speedy Trial Act itself; (2) Cobb/Henderson interpret the "motions" subsection of the Speedy Trial Act to mandate the exclusion of time from the making of a pre-trial motion until it is decided, without regard to whether the motion occasions any delay in the trial; (3) Section 3161(h)(1)(D) is the most closely analogous portion of the Speedy Trial Act to the situation in which we find ourselves, so it provides the "context" for determining the reasonableness of post-trial commencement delay; ergo (4) the period needed to decide the defense's substantial post-commencement of trial motions, measured from the date they were made (June 14) until they are decided (which, under the current briefing schedule, will be toward the end of July) is automatically "excludable" and should not count against the clock for Speedy Trial Act purposes. Put otherwise, the Government argues that post-trial delays attributable to a factor that is specifically addressed in the pre-trial context by the Speedy Trial Act should be treated in the manner they are treated by the Act, both before and after the commencement of trial. (I imagine that someday the Government may argue that the implication of this is that time needed to decide any

---

[4] The relevant subsection is presently enumerated as § 3161(h)(1)(D); at various earlier times, including when Cobb was decided, it was enumerated as § 3161 (h)(1)(F). The language of the subsection has not varied.

motion made after the commencement of trial should automatically be deemed reasonable, but that is for another day).

Furthermore, the Government argues, because any delay resulting from consideration of the defense motions is "contextually" analyzed under § 3161(h)(1)(D), the pendency of motions automatically renders the "ends of justice" section irrelevant, so any question of lack of diligent preparation of the case by the Government falls out of the equation entirely.[5]

For all its Rube Goldberg quality, the Government's argument is actually premised on a single paragraph in Stayton, which reads as follows:

> A reasonable post voir dire delay does not offend this congressional purpose, but the reasonableness of a delay must be determined in the context of the Speedy Trial Act itself, which is premised on strict time limits tempered by certain exceptions designed to accommodate the vagaries of the trial process. Thus, if the number of days of delay between the voir dire and the actual presentation of the case to a sworn jury cannot be justified in light of the reasons for the delay, the act is violated.

791 F.2d at 20. The critical phrase in this paragraph from the Government's point of view is "the reasonableness of a delay must be determined in the context of the Speedy Trial Act itself." Id. To the Government, this means that if time is automatically excludable for a particular purpose prior to trial, no time needed for that purpose should be deemed unreasonable after the commencement of trial.

To the defendants, the critical phrase in this paragraph from Stayton is "in light of the reasons for the delay." Cobb tells us that, prior to trial, motion time is automatically excludable, without regard to whether or not it causes any actual delay. But Stayton teaches that, once the trial begins, the reason for delay matters, and the court is not free to ignore that reason when it assesses the reasonableness of the period of the delay. Thus, in looking for the appropriate contextual reference in the Speedy Trial Act, the reason for the delay must be taken into account. And here, the delay we are currently experiencing was occasioned, not by the making of any defense motions, but by the Government's need to reopen its review for discoverable material. That defendants intend to seek relief during this period of delay does not make the motions "the reason for the delay." Indeed, as the delay is presently estimated to last at least until early August, the Court will have decided the motions before the Government is prepared to resume the trial, so the motions themselves will not occasion any delay. That fact would indeed be irrelevant if we were still prior to trial – Cobb says as much – but the defense does not read Stayton to say that it is irrelevant now. For that reason, the defense urges, the motion time should not be deemed excludable.

---

[5] There was absolutely no suggestion in Cobb that any delay was occasioned by the Government, let alone by lack of diligent preparation on the part of the Government.

However, it seems to me that the defense argument goes, as <u>Stayton</u> goes, to the reasonableness of the post-trial delay, not to the "excludability of time" (if that concept makes any sense any more in this matter). It well may be that the defense will have the better of the argument when we reach the question of reasonableness, but as I have already said, that question cannot and will not be answered now. But if we are still able to deal with the excludability of time, then the rule is the rule: in the context of excluding time, the reason for delay is not relevant, and motion time is automatically excludable.

This is true no matter what the motions are. The motions the defense is making are a direct result of the Government conduct that occasioned the delay. Viewed retrospectively, it may (or may not) be unreasonable to give the Government the benefit of any period when such motions were pending. It does seem somehow wrong that the defendants should have to forfeit speedy trial rights in order to obtain relief for what they consider, rightly or wrongly, to be Government misconduct. But the excludability of time is simply a function of the Act, and the Act, as interpreted by the courts, excludes time for motions, without regard to the nature of the motion or the reasonableness of the time needed to decide it.

Therefore, if it were someday determined that the Court should have made temporal exclusions under the Speedy Trial Act during the present continuance, I would conclude that the time attributable to defense motions should be excluded.

As I stated yesterday, the Court intends to shorten the time for briefing the motions. The Government's response to the defense motions will be seven calendar days after the defendants submit their briefs. This leaves in the hands of the defense whether it will accelerate the briefing schedule imposed by the Court, which makes its briefs due at the end of next week. Defense replies are due three calendar days after the Government serves its responsive brief. The Court will issue a decision as its highest priority. The goal of this acceleration is to allow only the shortest possible exclusion of time on the basis of pending motions.

If the conclusion just reached is correct (and assuming, again, that the concept of excluding time still makes sense), then there is no need to reach defendants' argument that no time, beginning on June 14, can be excluded for Speedy Trial Act purposes under the "ends of justice" section of the Speedy Trial Act. Under the Act, the motions subsection, with its automatic exclusion of time, trumps the "ends of justice" subsection. However, if I am wrong about the excludability of motion time, the Government clearly wants an "ends of justice" exclusion, and it argues that the Court is not prohibited from granting one. And since any such exclusion can only be granted prospectively, it is imprudent to leave the issue unaddressed.

I disagree with the Government on this issue.

"The basic rule of <u>Brady</u> is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001). "Favorable evidence includes not only evidence that tends to exculpate the accused, but

also evidence that is useful to impeach the credibility of a government witness." Id.at 139. "Because Brady and its progeny are grounded in the Due Process Clauses of the Constitution, the essential purpose of the rules enunciated in these cases is to protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him." Id.

The Government argues that the Court can grant an ends of justice exclusion during the current continuance because the continuance was not occasioned by any lack of diligent preparation on its part, but rather by the Government's belatedly learning that, as the Assistant put it, the Court holds a "different view" of Brady than was held by members of the prosecution team. (Tr. of June 14, 2010 proceeding at 17-18.) But if the Government thinks that its discovery of some difference of opinion with the Court over what might prove material to the defendants' guilt in this case negates the defense argument that its attorneys have been less than diligent in preparing for trial, I am constrained to disagree.

The scope of the Government's disclosure obligations under Brady, Giglio and other pertinent rules, and whether the Government was complying with those obligations, has dominated the pre-trial posturing in this case. Defense counsel demanded the production of Brady material almost before the ink was dry on the Indictment. As a matter of sound case management (which is to say, in the hope of avoiding precisely the unhappy situation in which we now find ourselves), the Court ordered the Government to produce any Brady material as soon as it could be located. This directive met no resistance from the Government; the assistants who indicted this case volunteered to make early production of Brady material, and announced as long ago as last September, that it had produced to the defense everything that might qualify as Brady material.

The defense responded – repeatedly, at every pre-trial conference and in its pre-trial motions – that this could not possibly be the case. Counsel pursued the issue of non-production of Brady material doggedly, insisting again and again that there had to be quite a bit more that had not yet been produced,[6] and demanding that the Court order the production of "all" Brady material.

Unfortunately (and defense counsel tend to forget this), there is little a court can do in this regard prior to trial, other than remind the Government of the peril that lies in failing to do its duty. A decade ago, the Second Circuit noted that, "[T]he scope of the government's constitutional duty [under Brady] – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001). As a result, district courts rarely have the opportunity to consider whether particular items should be turned over

---

[6] This prediction appears to have been correct: The Government has already announced that it will be producing upwards of 200 additional pages of documents. A box of materials that, according to the defense, contains unproduced Brady and Giglio material was received by defendants' counsel while the Court was holding the bail hearing in this matter. All 3500 and Giglio material was to have been turned over to the defense by May 19.

11

pursuant to Brady prior to trial (as opposed to directing early production of all such material as a matter of sound trial management, see United States v. Stein, 424 F. Supp. 2d 720, 726-27 (S.D.N.Y. 2006)) – nor, in the ordinary course, is it appropriate for them to do so. The Government, not the court, knows what its case is, and the Government is charged with putting itself in the shoes of defense counsel and figuring out (1) what evidence would be "material" to the defendant's guilt or punishment, and (2) whether there is some other reason why it need not be turned over to the defense. And in the ordinary course, the Government makes that determination with little or no direction from the court.

The danger for the Government is that it will take "too niggardly an approach" to materiality, id. at 726 – or, as this Court tends to phrase it, that it will slice the salami too thinly. The punishment for missing the mark is dire: a Brady violation undermines the validity of a conviction. Therefore, in this case, as in every case, I have repeatedly urged the Government not to borrow trouble by adopting an overly narrow view of what it should turn over under Brady.

The last of the many times I did this was in the May 18 opinion ruling on the various defense pre-trial motions. Defendants had included in their pre-trial motions a further demand for Brady material, raising yet again the specter that there "had to be" considerable Brady evidence that had not yet been produced. As always, the defendants' emphasis was on their entrapment defense, which imposes on the Government the burden of proving lack of entrapment. The Court did what it could – it reminded the Government of the need to comply with its constitutional obligation and the peril that lay in slicing the salami too thinly. But because of the pendency of the entrapment defense, I went further, and said that the Government had to consider the Brady implications of both Government inducement and lack of predisposition on the part of the defendants. This statement could hardly be considered a "news flash," in view of Second Circuit precedent on entrapment. United States v. Al-Moayad, 545 F.3d 139 (2d Cir. 2008).

But it was apparently this statement that led the Government to alert the defense that it might consider Fuller 3501-188 to contain Brady material, which led the defense to argue that the Government had not complied with its Brady obligations, which led the Court to opine that Fuller 3501-188 did indeed contain Brady material, which led the Government to announce that it had not conducted a sufficiently thorough or wide-ranging search for possible Brady material.[7]

I reject the notion that the Government's request for a continuance was occasioned by anything that emanated from the defense motion – not the Court's decision with its pointed warning, not the Government's belated turnover of Fuller 3501-188 with

---

[7] The Government also began giving the Court documents to assess for Brady compliance – which, with the benefit of hindsight, was something I should not have done, even though the Government asked me to and my "review" was limited to three e-mails. At yesterday's hearing, the Government suggested that it would be asking for more such assessments, but I trust I have disabused it of any notion that I will engage in this exercise again.

the suggestion that it might contain Brady material, not the defense's insistence that the document obviously contained Brady material, and not the Court's concurrence in that assessment. Rather, the Government asked for a continuance because it became apprehensive that it had failed to make an adequate pre-trial assessment of the Brady implications of the entrapment defense.

The Government has admitted on at least two occasions – the most recent being yesterday afternoon (Tr. of June 24, 2010, at 33) – that it focused its pre-trial Brady analysis on materials relating to the Government's inducements (payments/gifts/gratuities to the defendants). The Government stated that material relating to inducements was what the defense had asked for in its various requests for Brady material, so that was how the Government understood the scope of its Brady obligations. It did not take a broader view of what might constitute Brady material until the Court openly agreed with the defense contention that Brady, in the context of this highly unusual case, would encompass more than money and cars and chicken dinners.[8]  At that point, according to the Government, the rules of the game changed.

That dog won't hunt.

First of all, the Court's May 18 pronouncement did nothing but echo Second Circuit law on entrapment. The Government is charged with knowing the law, and with assessing its discovery obligations in light of the law. Admittedly, entrapment is not an area in which most of us have a great deal of experience; but the Circuit has quite clearly set out three bases for concluding, on the basis of objective evidence, that the defendants were in fact predisposed to commit the crimes charged. The Circuit's decision provided the prosecutors with a framework for assessing materiality long before this Court got into the act.

Second, any suggestion that the Court's so-called "expansive" reading of Brady (and, I assume, Al-Moayad) required the Government to go searching for evidence in new and different places suggests that either the Government or the Court misunderstands how a prosecutor goes about complying with discovery obligations. The fair implication of statements made at yesterday's hearing is that there are places where there is evidence relating to this case that have not yet been reviewed. (Tr. of June 24, 2010, at 41-44). This suggests that, at some point early on in this prosecution, the Government decided not to look in those places, or at those documents, because nothing in them could possibly be discoverable, whether as Brady, or 3500, or Giglio, or Rule 16 material.

I have never been a prosecutor. But I have always understood that the Government needs to gather up all the documents and material that touch on a pending indictment, from all sources within the Government, and only then make its assessment of what is and is not discoverable. I do not understand how the Government could possibly know whether it had complied with its obligations under the various discovery

---

[8] There is no need to address here the various defense arguments concerning the Government's failure to turn over material, whether it be Brady, Giglio, 3500 material or simply Rule 16 discovery, until well after the Court ordered it to do so.

rules (including Brady) until it actually looked at all the material in its possession. What the Government has not examined it cannot have assessed for materiality or discoverability.

It may well be that looking through never-before-seen files will turn up nothing at all – or at least nothing that needs to be turned over because it fits within the exceptions to Brady or Giglio that have been discussed again and again in pre-trial proceedings, and that have not been altered or expanded one jot or tittle by this Court. But it may also be that the Government will turn up something that it would have recognized as discoverable months before the Court uttered a word about the scope of Brady in the context of this unusual case. The Government cannot possibly know anything until it looks at the documents.

Finally, if the Government truly believed, prior to May 18, that it had conducted an adequate review of material relating to this case for discoverability, it would have respectfully disagreed with my opinion about Fuller 3501-118 (a document it had already turned over) and never asked what the Court thought about the discoverability of any other document.[9] We would have continued with the examination of the jurors and been well into the trial by now.

But the Government was and is obviously concerned that it had sliced the salami too thinly. Unfortunately, it took the Government thirteen months to reach this conclusion, despite no lack of prodding from the defense. The Government's belated discovery that there was more pre-trial work to do evidences a lack of diligent preparation, and nothing else.

For the foregoing reasons, if it were appropriate to exclude time in the present circumstances, I do not believe I have the authority to grant the Government application to exclude time pursuant to an "ends of justice" continuance. See § 3161(h)(7)(C).

Of course, the Court has already granted one "end of justice" exclusion, which runs through today. The defense challenges that exclusion. Assuming it is possible to exclude time in our current circumstances, I stand by it.

Although the Government has retreated from its original position that these particular defendants were involved with international terrorist organizations, this matter originated as a counterterrorism investigation, and that has implications. If the Government determines that classified documents are discoverable, then we may have to handle such documents in accordance with the Classified Information Procedures Act ("CIPA"), Pub. L. No. 96-456, 94 Stat. 2025 (1980) (codified at 18 U.S.C. app. 3).

Many judges (myself included) have availed ourselves of continuing education courses on national security law and its procedural ramifications. But few of us can be expected to retain familiarity with this intricate and evolving area of the law – an area in which most cases raise issues of first impression, and some matters cannot be discussed

---

[9] The Government has admitted that this was an unorthodox request. (See Tr. of June 24, 2010, at 44).

in publicly available opinions. This case represents this Court's first encounter with the reality of classified information and CIPA procedures, as well as the intersection between the handling of classified material and other concerns, including Speedy Trial Act issues. When the Government sought its adjournment, the Court had no idea what the procedural ramifications would be. In fact, I did not even know whether we were officially on trial or not for Speedy Trial Act purposes. I needed to educate myself.

During the last ten days, the matters that I thought were going to consume my time have taken a back seat to the issues discussed in this opinion. Because the case is stuck in an unusual posture – we have not located a single precedent that is remotely similar – it raises complex and novel procedural issues relating to the defendants' speedy trial rights. Complexity and novelty are factors that Congress has specifically directed a court to consider when making an ends of justice exclusion.  The public's interest in a speedy trial – another factor the Court must consider under the Act – is offset by the public's interest in having this case jeopardized by too-hasty rulings that could end up working a miscarriage of justice.

This Court strongly endorses the position that defendants – who have spent the last thirteen months in jail while under a presumption of innocence – are entitled to their day in court as quickly as possible. But I also believe that the ends of justice, including specifically the public's interest in a speedy trial for these defendants, were best served by allowing a brief period of excludable time – a "time out" – to assess the implications of the situation. Therefore, for ten days, the ends of justice compelled me to conclude that the need for a continuance outweighed the defendants' and the public's interest in a speedy trial.

I appreciate defense counsel's sentiment that, "We are all capable of doing research quickly." And yes, perhaps the Court could have done what it had to do in one, or three, or five, or seven days. But on June 14 ten days seemed a perfectly reasonable period of time to exclude.  In hindsight, given the procedural morass we are in (which gets more complicated the deeper in we wade), ten days may not have been enough of a "time out" – it was not until this morning, for example, that I was finally able to articulate what I now believe to be the flaw in our discussion of the speedy trial issues. Frankly, I would have liked more "free" time to work that issue through with the assistance of able counsel. But ten days is the time I gave for a "time out" without consequences, and while I will not exclude any more time for this purpose (assuming that the exclusion of time has any relevance in the current circumstances), neither will I take the ten days back. If time is excludable from and after June 14, then those ten days are excluded.

## Speedy Trial Time

The parties have been at odds over how many days had run on the Speedy Trial clock prior to its stoppage with the commencement of trial. However, I believe that the most recent missive from defense counsel concedes that the full seventy days were still available when the clock stopped.

15

In its letter dated June 18, 2010, defendants conceded that the time from the date of Indictment through April 30, 2010 was properly excluded by the Court.

On April 30, 2010, defense motions were still pending (they were to have been decided by April 30, but counsel stipulated to an extension of the court-ordered briefing schedule, so the motions were not fully briefed until April 27). Therefore, time was automatically excluded through the date of decision, pursuant to 18 U.S.C. § 3161 (h)(1)(D). The motions were decided on May 18, 2010.

On May 19 – the day the clock would have begun to run – the Government filed motions *in limine*. This, as defendants concede in their letter dated June 22, 2010, again stopped the clock, through the date of decision, which was May 28, 2010. See Bloate v. United States, 130 S. Ct. 1345, 1349 (2010); see also United States v. Sposito, 106 F.3d 1042, 1044 (1st Cir. 1997); United States v. Johnson, 32 F.3d 304, 306 (7th Cir. 1994).

On May 28, the court excluded time through June 14, and defendants also concede that this time was properly excluded. (Letter of June 18, 2010.) As previously noted, the clock effectively stopped with the commencement of trial on June 8, rather than on June 14.

Therefore, no speedy trial time had run as of the commencement of trial. If the concept of seventy days of Speedy Trial time has any relevance any longer, then I have excluded time through today, June 25, and the seventy days start running on June 26 and run out on September 3.

I emphasize again that this calculation, like the entire discussion of the parties' arguments over excluding time, is entirely hypothetical, since I presently do not understand the situation to admit of any "exclusion" of time. Rather, at some point in the future (if there is a conviction), we may have to examine whether the period of delay was reasonable or not. **Nothing in this decision should be interpreted as predetermining whether any period of delay, viewed retrospectively, will be found to be reasonable or unreasonable.** If we ever have to address the Stayton issue, the parties are free to argue from points made in this decision, but they should not argue that the Court has already decided the matter one way or another – because I have not.

I am directing the Government not to wait until it has acquired all available information from the various sources it is checking, but to make a CIPA motion as soon as it knows it has to, concerning any documents it is able to discuss with the Court. It is not advisable to wait until August 6 to deal with this issue if it is possible to do so, in whole or in part, sooner.

16

I will be in touch with the parties next week concerning possible trial dates.

Dated: June 25, 2010

_____
Colleen McMahon
U.S.D.J.

BY ECF TO ALL COUNSEL