UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA,                    Docket No.: 09-Cr-558 (CM)

      -against-

JAMES CROMITIE,

          Defendant.

----------------------------------------------------X

## REPLY MEMORANDUM – MOTION FOR
## SENTENCE REDUCTION/COMPASSIONATE RELEASE

JAMES CROMITIE, by counsel, submits the following in response to the Government's

opposition to his motion for a sentence reduction. The Government's opposition: (1) devotes little

attention to the effect of the Court's Decision and Order of July 27, 2023; (2) fails on the merits

as to the presence of extraordinary and compelling circumstances; (3) misconstrues the purpose of

the additional factors Cromitie brought to the Court's attention in his motion; and (4) errs in its

argument that the sentencing factors in 18 U.S.C. § 3553(a) are an impediment to compassionate

release in this case.

    As a result, the Government's submission provides no reason why Cromitie should not

receive a sentence reduction based on compassionate release just as the Court granted to his former

co-defendants.

### I.       The Effect of the Decision and Order of July 27, 2023

Cromitie's motion, filed on September 10, 2023, relies on the Decision and Order and the

Court's findings therein. The Decision and Order resolved motions for compassionate release filed

by Cromitie's former co-defendants David Williams, Onta Williams and Laguerre Payen, but the findings by the Court that led to granting of the co-defendants' motions are just as applicable to James Cromitie. The Government did not appeal the Decision and Order, and the Court's decision and findings therein are final. Cromitie submits that they are determinative of his motion.

In its Decision and Order, the Court stated clearly its factual findings and conclusions of law upon which it granted the motions, which included a determination that the defendants, including Cromitie, were hapless and petty criminals, not terrorists in any sense, who were easily manipulated by the contemptible government informant Shaheed Hussain. Part of the multi-pronged conspiracy created by the Government was to fake an "attack" on Stewart Air Force Base using a make-believe "stinger missile," which the Court concluded was devised in order to subject the defendants to a mandatory minimum sentence of 25 years. The defendants would not have even thought of such a crime on their own and would not have had any idea where to start if they had thought of it, but instead were manipulated into committing it by the Government and its informant. The 25-year sentence ultimately imposed on the defendants thus was the engineered product of the Government's manipulative conduct and was manifestly unjust. The Court concluded that the sentence it was required to impose was greater than necessary to punish the four defendants for their actual criminal conduct.

The findings led to the Court's ultimate conclusion that the Government-engineered sentence amounted to an "extraordinary and compelling circumstance" warranting relief or the co-defendants under 18 U.S.C. § 3582. The facts and issues, already determined, that governed the outcome of the co-defendants' motions should likewise govern the outcome of Cromitie's motion.[1]

---

[1] Under the "law of the case" doctrine, when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the case unless cogent and compelling reasons exist to depart from it. *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). Courts

In his motion, each co-defendant presented individual factors which did not constitute "extraordinary and compelling circumstances" on their own but added to the "mix" upon which relief was sought. In the Decision and Order, the Court found the contrived and overly long sentence based on the Government's manipulative conduct to be an extraordinary and compelling basis to grant a sentence reduction, "whether considered by itself or in a 'total mix' of factors" presented by the moving defendants. (Decision, p. 18).

It is noteworthy that the Government's submission devotes little attention to the Court's Decision and Order of July 27 and no attention at all to its controlling effect in the matter of Cromitie's motion. The Government attempts to distinguish Cromitie, addressed below, but does not explain why the findings and conclusions, which the Court has already reached and which were not appealed by the Government, should not be applied to Cromitie. Those determinations, based on the same Government manipulation of facts forcing the imposition of an overlong and unjust sentence, apply to each of the defendants, including and especially James Cromitie.

## II.    The "Extraordinary and Compelling Circumstance" in Cromitie's Case

Even if the presence of an "extraordinary and compelling circumstance" had not been previously determined, the Government's opposition to Cromitie's motion would still fail. That opposition, filed on November 17, 2023, consists mostly of a lengthy chronicle of the procedural events of this case from the Government's perspective and a familiar review of the law that applies to compassionate release motions. When the Government finally reaches Cromitie's motion, its discussion is brief and closely resembles its own prior sentencing memorandum.  It all but ignores

---

may reconsider prior decisions and depart from them when there is a change in the controlling law or new evidence appears, and when necessary to correct an error or prevent manifest injustice. *DiLaura v. Power Authority*, 982 F.2d 72, 76 (2d Cir. 1992); *United States v. Uccio*, *id*. None of those circumstances is present here. Where the doctrine applies, it compels a court to follow its earlier ruling. *See Johnson v. Holder*, 504 F.3d 95 (2d Cir. 2009).

the Government's own misbegotten conduct.

The basis for Cromitie's motion, like the motions of the co-defendants, is focused on the conduct of the Government and its intended and then realized effect on the sentences that were imposed in this case. The Government however discusses entrapment and the scheme in terms of trial and appeal issues, but has little or nothing to say about the conduct of the Government upon which the compassionate release motions rest. That specific conduct, implementing a fake stinger missile as part of the criminal misconduct the Government designed for these gullible, stupid defendants to commit, tied the defendants and the Court to a 25-year mandatory minimum. However, it simply is not addressed in the Government's opposition papers.

The Court concluded that the 25-year sentences, as engineered by the Government, were excessive and greater than necessary for all of the defendants. The Government nevertheless attempts to distinguish Cromitie from the other defendants, presumably to imply without saying so that 25 years was not an excessive sentence for Cromitie even if it was excessive as to the other defendants.

The distinctions upon which the Government relies are unconvincing at best and fanciful at worst, and none of them support a different outcome for Cromitie. The Government argues for example that Cromitie was involved in the scheme "far longer" than the others, but does not note that Cromitie did nothing during the extra time despite the Government informant's unrelenting pressure on him to become active, and that Cromitie spent much of the extra time hiding from the informant in order to escape that pressure. The argument that he "recruited" the co-defendants fails because any such conduct was at the direction of the informant for the Government and was ordered so that the crime of conspiracy would be legally possible. The notion, if it is to be taken seriously, that Cromitie was selected as a "leader" by the co-defendants, or by anyone, is

inconceivable, given his well-documented buffoonery and ineptitude. That ineptitude extended to the Government-made fake bombs which Cromitie was unable to set despite being shown how to do it by the informant, and it was the informant who ended up setting the "bomb" for James and giving it to James to place. The Government believes that sad sequence shows that Cromitie had a more significant role in the offense, but to the rest of the world it would appear that the Government was selecting the most expendable, most pathetic, least capable and least discerning defendant to just use him in the scheme it designed, even if none of it was real. One can only imagine how the stinger missile ploy, with James in charge, would have gone if the scheme ever reached that stage. Fortunately, there would have been no reason for anyone to duck since no missile would have launched no matter where it was aimed or who aimed it.

The Government makes a point of Cromitie's vile antisemitic language but not of its own informant's vile antisemitic language and his encouragement of Cromitie's disgusting diatribes. The language was shameful to be sure, but the Government had a hand in it and it does not in any event support the 25-year sentence the Court had to impose on Cromitie.

The Government also seeks to take advantage of amendments to the Sentencing Guidelines, including the addition of a subsection "Unusually Long Sentences" to U.S.S.G. 1B1.13 (sub. 6), Reduction in Term of Imprisonment Under 18 U.S.C.§ 3582(c)(1)(A) (Policy Statement). One of the requirements of that new subsection is a change in the law, not present here. However, it is a misconception to believe Cromitie and the co-defendants sought a finding of extraordinary and compelling circumstances based on an "unusually long sentence" instead of on Government engineering of the facts that resulted in an excessive mandatory sentence. They did not argue the 25-year sentence, the minimum sentence that could be imposed, was merely "unusually long," but rather that it was excessive, unjust and greater than necessary in the context of the defendants'

crimes. That is what the Court found in deciding the co-defendants' motions. "Unusually long" and "excessive, unjust and greater than necessary" are not the same thing.

Another amendment, "Other Reasons" (subsection 5), refers to the listed reasons for a sentence reduction in subsections (1)-(4) and states that "any other reason of similar gravity to the listed reasons qualifies for a sentence reduction." The Court found that the disreputable conduct of the Government and the intended purpose and effect of that conduct on this case would qualify, and in fact was graver than the listed reasons. The subsection thus supported the co-defendants' motions, just as it supports Cromitie's.

The Court concluded that nothing in the amendments precluded it from considering "the circumstances that resulted in the imposition of Defendants' unjustly harsh sentence as an extraordinary and compelling circumstance" (Decision, p. 16).

The Court also noted that the amendments, then proposed, could not go into effect until November 1, 2023, and thus had no governing effect on the co-defendants' motions. The Government does not mention this effective date, which had not been reached when Cromitie filed his motion on September 10, 2023. The amendments had no governing effect then either. Guideline amendments are applied prospectively and the Government's slow response, not filed until November 17, 2023, does not make applicable Guidelines that were not in effect at the time the motion was filed. Since the amended Guidelines do not affect the merits of this motion, the Government's reliance on those Guidelines is unavailing.

### III.   Additional Factors Support a Reduction of James Cromitie's Sentence

In his motion, Cromitie provided additional information about the years he has spent in prison. He described rehabilitation efforts he has made, his experience with COVID prison

restrictions, and personal health issues. Contrary to the Government's reading, he did not argue that these facts, singly or together, warranted a sentence reduction. Instead, as he stated, they were contextual factors the Court "may consider." A closer reading of Cromitie's motion would have profited the Government.

Despite its argumentative stance, the Government does not take issue with any of the additional facts raised by Cromitie. He has made improvements in his life and has health issues to deal with, as the BOP's records received from the Government show. He endured harsh conditions of confinement as a result of the pandemic. Cromitie's disciplinary record is not perfect, but his conduct has not been a problem. He submits that it is fitting and proper that the Court be aware of some of his challenges and some of his successes realized as he serves his sentence.

Cromitie's rehabilitation efforts and medical needs bolster and "tip the scales" when considered with the unjustly harsh sentence he is serving, just as the co-defendants' factors did. That sentence and the way it arose stand alone as an extraordinary and compelling circumstance warranting relief, but the facts Cromitie provided make the consequences of the sentence more human. It is to be hoped that compassionate release here can serve as a check on the Government's misconduct so that others will not experience what the defendants in this case have, the consequences of an unjustly excessive sentence. Granting the present motion is completely just and appropriate.

IV.    **The Section 3553(a) Factors Present No Reason to Deny Cromitie's Motion**

The Court is well aware of the nature and circumstances of the offense and of James Cromitie's personal characteristics. The Government recycled its sentencing memorandum and sentencing arguments that it and the Probation Office made years ago, but as noted, it pays little attention to the Court's findings in the Decision and Order of July 27, 2023. It does not dispute the

essential finding of the defendants' "agreement to participate in what the FBI and Hussain cooked up . . . a fictitious plot to do things that these men had never remotely contemplated, and that were never going to happen" (Decision, p. 26). Cromitie, as much or more than his co-defendants, was gulled into this agreement by the FBI and Hussain and would never have dreamed of the crimes into which he was led by them.

The Government does not argue these facts, but instead elevates Cromitie into the realm of fiction: leader of men, recruiter of terrorists, prominent handler of the (fake) bomb. None of these withstand scrutiny or accurately describe Cromitie or his conduct. In reality, he was an impoverished, gullible and incapable man, a grifter and petty criminal, a sad sack who took the bait dangled in front of him. He spoke in vile terms but was joined and egged on by the Government's informant and there is ample reason to doubt that he meant any of the things he said. For the Government to still portray Cromitie as it does is just unfathomable.

There is nothing to be gained by way of general deterrence or promotion of respect for law by keeping James Cromitie behind bars longer than the 15 years he has already served. The Government suggests nothing. Rather, it is the Government that has diminished respect for law time and again, beginning with its "questionable decision to send a villain like Hussain to troll among the poorest and weakest of men for 'terrorists' who might prove susceptible to an offer of much-needed cash in exchange for committing a faux crime" (Decision, p. 27), and extending to the trial.[2]  The Court views James Cromitie with clear eyes. It is unfortunate that the Government

---

[2] Hussain's moral bankruptcy and the lost respect for law it caused were still on display at trial, where his lies included testimony that "$250,000" was a code rather than a promised reward, which the Government urged the jury to believe. The Second Circuit found this ethical lapse serious enough to observe that "it would have been more candid to have conceded to the jury that the CI's claim that the $250,000 was a code was not credible." *United States v. Cromitie, et al.,* 11-2884 (ECF Doc. 135) (2d Cir. Dec. 18, 2013). It is to be hoped that the Government has thought about the consequences of its reliance on someone like Hussain and its own conduct.

is unable to, and its opposition to Cromitie's motion to join his co-defendants in compassionate release is ill-considered and fails to reclaim any of the respect for law it has lost.

There is nothing in the sentencing factors set forth in 18 U.S.C. § 3553(a) that stand in the way of granting Cromitie's motion. Reducing a sentence recognized to be greater than necessary would also bring meaning in this case to the parsimony clause of § 3553(a) and serve justice.

## CONCLUSION

Based on the Court's Decision and Order of July 27, 2023, the reasons stated herein, and the reasons previously stated, James Cromitie's motion for a reduction of his sentence and compassionate release should be granted.

Dated:  White Plains, NY
        December 4, 2023

Respectfully submitted,

*Kerry A. Lawrence*

_____
KERRY A. LAWRENCE, ESQ.
Law Office of Kerry Lawrence, PLLC
*Attorney for Defendant, James Cromitie*
140 Grand Street, Suite 705
White Plains, New York 10601
914-946-5900
kerry@kerrylawrencelaw.com

cc: AUSA Jonathan L. Bodansky